# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **LOGAN STORM**, <br><br>　　　　　Defendant. | Case No. **3:11-cr-00373-SI** <br><br> **OPINION AND ORDER** |

S. Amanda Marshall, Jane H. Shoemaker, and Gary Y. Sussman, OFFICE OF THE U.S. ATTORNEY, 1000 S.W. Third Avenue, Suite 600, Portland, OR  97204.  Of Attorneys for Government.

Gerald M. Needham and Amy Baggio, OFFICE OF THE FEDERAL PUBLIC DEFENDERS, 101 S.W. Main Street, Suite 1700. Portland, OR  97204.  Of Attorneys for Defendant.

**SIMON, District Judge.**

Defendant Logan Storm ("Storm") is charged with one count of knowingly possessing images of child pornography, as defined in 18 U.S.C. § 2256(8), in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  Storm has filed three motions to limit the jury's ability to view images of child pornography and other images that the Government seeks to introduce in evidence and publish to the jury.  Storm's three motions are captioned:  (a) Motion *in Limine* to

Stipulate that Images Constitute Child Pornography and Not Be Exhibited to the Jury (Dkt. 64);

(b) Motion *in Limine* to Preclude Introduction of Images Recovered from Unallocated Space

("Cache") and Deleted Trash (Dkt. 65); and (c) Motion to Preclude Vast Majority of Images

Proposed to Be Published to the Jury by the Government (Dkt. 67). As discussed below, Storm's

first two motions (Dkts. 64 and 65) are DENIED, and Storm's third motion (Dkt. 67) is

GRANTED IN PART AND DENIED IN PART. Of the 97 slides that appear to contain child

pornography, the Government may show no more than 38 slides to the jury, as explained below.

Other limitations on what the Government may show to the jury are also described below.

## BACKGROUND

At trial, the Government plans to offer in evidence the imaged copies of three computer

or other electronic media storage devices seized from Storm's residence. These media storage

devices consist of a Macintosh laptop hard drive and two thumb drives (a Lexar-brand thumb

drive and a Geek Squad-brand thumb drive). The Government has stated that it proposes to

show to the jury during trial numerous images of child pornography and other images discussed

below that the Government alleges were found on one or more of these devices. For the

purposes of these motions, Storm and the Government do not appear to dispute that the

Government's proposed exhibits to be published to the jury include 97 slides (either PowerPoint

slides or other screen shots) that contain numerous images of child pornography.[1] *See* Dkt. 77;

*see also* Dkt. 75. Storm states that he will stipulate that the images constitute child pornography,

---

[1] Many of these slides contain only one image, but a number of slides contain several images, and some contain multiple "thumbnail" images on a single slide. Where a single slide contains multiple images, it sometimes appears that these images may be a collection of photographs or individual frames from a video or film. The Government does not intend to publish to the jury any videos or films and does not appear even to allege that Storm possessed any such videos or films in that format.

but he does not concede that he knowingly possessed those images or that they were transported in interstate commerce, which are among the required elements of the alleged crime.

## DISCUSSION

**I.    Motion *in Limine* to Stipulate that Images Constitute Child Pornography and Not Be Exhibited to the Jury (Dkt. 64)**

Because he is willing to stipulate that the Government's exhibits constitute child pornography, Storm argues that allowing the Government to publish and show these images to the jury would be unfairly prejudicial because the images are repulsive and inflammatory.  Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  In his first motion, Storm asks the Court to prohibit the Government from showing any images of child pornography to the jury. He relies primarily on *Old Chief v. United States*, 519 U.S. 172 (1997), and *United States v. Merino-Balderrama*, 146 F.3d 758 (9th Cir. 1998).

In *Old Chief*, the Supreme Court held that a defendant charged with being a felon in possession of a firearm could stipulate to the fact of his prior felony conviction and thereby prevent the prosecution from introducing evidence about his past crime.  Because the fact of the defendant's prior conviction is "wholly independent[] of the concrete events of later criminal behavior charged against him," excluding evidentiary details of that past crime "would not deprive the prosecution of evidence with multiple utility."  519 U.S. at 190.  Applying Rule 403, the Supreme Court concluded that the defendant's stipulation would therefore be equally probative of the element of prior felony conviction, but it would avoid the risk of unfair prejudice inherent in airing the defendant's prior bad acts before the jury.  *See id.* at 190-91.

OPINION AND ORDER – Page 3

The Supreme Court in *Old Chief* made clear, however, that this was a narrow exception to the "familiar, standard" and "accepted rule" that "the prosecutor is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Id.* at 186-87. This "accepted rule" allows the Government to tell a coherent story and enables the jury to draw reasonable inferences with confidence. As the Supreme Court explained:

> [M]aking a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness. . . . Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.

*Id.* at 187. The Government's right to choose its evidence also allows the prosecution "to satisfy the jurors' expectations about what proper proof should be," thereby avoiding speculation about why certain evidence was not presented. *Id.* at 188-89. "People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard." *Id.* at 189. Thus, the Court firmly concluded that "the prosecutor's choice will generally survive a Rule 403 analysis when a defendant seeks to force the substitution of an admission for evidence creating a coherent narrative of his thoughts and actions in perpetrating the offense for which he is being tried." *Id.* at 192.

It is this dicta from *Old Chief*, and not its narrow exception for prior felony convictions, that guides this child pornography prosecution. The images of child pornography that the

Government seeks to publish to the jury are an integral component of the prosecution's coherent narrative, a part of "the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." *Id.* at 191.  Unlike the prior felony conviction at issue in *Old Chief*, the content of these images is not "independent[] of the concrete events of later criminal behavior," but the very essence of the crime charged.  *See id.* at 190.  Further, telling the jury that the computer files contain child pornography "may be like saying, 'never mind what's behind the door'"; it would make it more difficult for the jury to do its already-difficult job of sitting in judgment over serious criminal allegations.  *See id.* at 188-89.

The Government also argues that this is evidence "with multiple utility," *id.* at 190, that bears on the two disputed elements in this case:  *scienter* and interstate commerce.  According to the Government:

> Viewing the images will help the jury to see that defendant knowingly possessed them, not just by the volume of images, but their placement in powerpoint files amongst photos of defendant's students, amongst cartoon pornography of the same type someone was viewing on defendant's laptop shortly before the search warrant was executed at his residence, and amongst photographs of defendant's former girlfriend.  Some of the images to be shown to the jury appear on more than one of the devices. Seeing this, and file information showing the amount of time editing the power point files, is critical to establishing defendant's guilt.

Gov't Resp. Def.'s Mot. *in Limine* (Dkt. 68) at 5-6.  The Government further argues that the images will "negate any suggestion or claim that they might have been put there by [Storm's] girlfriend, his roommate, his son, a computer virus, or anyone else." *Id.* at 5.  The Court is persuaded by the Government's proffer of multiple utility, which increases the probative value of this evidence that the Court is required to balance against the risk of unfair prejudice.

OPINION AND ORDER – Page 5

The Ninth Circuit's ruling in *Merino-Balderrama*, relied on by Storm, does not require a court to prohibit the publication of images of child pornography to the jury.  In *Merino-Balderrama*, several films, or videos, of child pornography were found in the trunk of the defendant's car.  The defendant insisted, and the Government did not dispute, that he never viewed the films.  The boxes containing the films, however, depicted still photographs from the videos that were themselves graphic depictions of child pornography.  The defendant did not challenge the introduction in evidence (or the publication to the jury) of the box covers, only the screening to the jury of portions of the actual films.  The Ninth Circuit held that the district court erred in allowing the Government to screen portions of the films to the jury despite the defendant's offer to stipulate that they constituted child pornography.  Based on the particular facts of that case, where the parties agreed that the defendant had seen the box covers but had not viewed the films themselves, the Ninth Circuit reasoned that the films were less probative of *scienter* than the box covers and that the prejudice from screening the actual films substantially outweighed any probative value.  *See* 146 F.3d at 762-63.

Notably, the Ninth Circuit did not suggest that images of child pornography should not be shown to the jury whenever a defendant is willing to stipulate to their content.  Indeed, images of child pornography (namely, the still images from the boxes that held the films) *were* shown to the jury in *Merino-Balderrama*.  The principle confirmed in *Merino-Balderrama* is simply that a court must weigh the prejudicial nature of exhibits of child pornography against their probative value whenever a defendant offers to stipulate to their content, a balancing that is fact-specific and will vary from case to case.  *See id.* at 762 & n.3.  It is perhaps not surprising, then, that the Ninth Circuit has never applied *Merino-Balderrama*'s specific holding in another child

pornography case.  In fact, it has routinely held that a defendant's offer to stipulate to the pornographic content of images does *not* override the prosecution's choice to publish at least some of those images to the jury in order to help build the prosecution's case.  *See, e.g.*, *United States v. Endacott*, 479 F. App'x. 779 (9th Cir. 2012) (district court did not abuse discretion where "the images themselves were indicia of [defendant's] knowledge"); *United States v. Ganoe*, 538 F.3d 1117 (9th Cir. 2008) (same); *United States v. Lester*, 164 F. App'x 647 (9th Cir. 2006) (rejecting defendant's reliance on *Merino-Balderrama*); *United States v. Smith*, 54 F. App'x 282 (9th Cir. 2003) (same); *see also United States v. Hay*, 231 F.3d 630, 638-39 (9th Cir. 2000) (where images were not published to jury during trial, court did not err in later allowing jury to see three images upon request); *accord United States v. Cunningham*, 694 F.3d 372, 391 (3d Cir. 2012) ("[C]ourts are in near-uniform agreement that the admission of child pornography images or videos is appropriate, even where the defendant has stipulated, or offered to stipulate, that those images or videos contained child pornography."); *United States v. Blank,* 2012 WL 6014577 (5th Cir. Dec. 4, 2012) (same).

Because Storm's first motion seeks to prohibit the publication of any images of child pornography to the jury, the Court denies this motion in light of the "standard rule" that the "prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away."  *Old Chief*, 519 U.S. at 186, 189.  Storm emphasizes the inflammatory nature of these images and the very real risk that jurors will want to punish someone, anyone, for their existence.  As the Ninth Circuit noted in *Ganoe*, however, "[t]he court is not required to scrub the trial clean of all evidence that may have an emotional impact."  538 F.3d at 1124 (quoting *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008)).  This is particularly true

OPINION AND ORDER – Page 7

where the very nature of the crime alleged is inherently inflammatory.  But the Court's job *is* to

avoid unfair prejudice.  *Id.*  Thus, even though the Court holds that the Government may present

some images of child pornography to the jury, it will not allow the Government to deluge the

jury with cumulative graphic depictions of child abuse.  The point where the risk of unfair

prejudice substantially outweighs the probative value of any additional individual image of child

pornography will be discussed below, in the context of Storm's third motion under Rule 403.

## II.    Motion *in Limine* to Preclude Introduction of Images Recovered from Unallocated Space ("Cache") and Deleted Trash (Dkt. 65)

Storm next moves to exclude images recovered from "unallocated space[2] or 'cache'[3] and

deleted trash."[4]  Mot. *in Limine* (Dkt. 65) at 1.  Storm argues that there is no evidence that he

knew the files were present in the unallocated space of his computer or that he had "forensic

---

[2] "Unallocated space is space on a hard drive that contains deleted data, usually emptied from the operating system's trash or recycle bin folder, that cannot be seen or accessed by the user without the use of forensic software.  Such space is available to be written over to store new information.  Even if retrieved, all that can be known about a file in unallocated space (in addition to its contents) is that it once existed on the computer's hard drive.  All other attributes—including when the file was created, accessed, or deleted by the user—cannot be recovered."  *United States v. Flyer*, 633 F.3d 911, 918 (9th Cir. 2011).

[3] Cache files, which are different from unallocated space, are a "set of files kept by a web browser to avoid having to download the same material repeatedly . . . so that the same images can be redisplayed quickly when you go back to them."  *Flyer*, 633 F.3d at 918 (citation and quotation marks omitted; ellipses in original).  "Cache files are located in an area to which the internet browser automatically stores data to speed up future visits to the same websites.  The user does not manually save the cache files but can access them and print, rename, or save the files elsewhere, the same thing he or she could do with any other file."  *Id.* (citation, quotation marks, and brackets omitted); *see also Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1156 n.3 (9th Cir. 2007) ("A user's personal computer has an internal cache that saves copies of [internet] webpages and images that the user has recently viewed so that the user can more rapidly revisit these webpages and images.").

[4] Although an electronic document or image on a computer may have been deleted by a user and thus sent to the computer's trash or recycle bin folder, it nevertheless remains in the computer's allocated space until it has been affirmatively "emptied," at which time it is transferred by the computer's operating system to unallocated space.  *See Flyer*, 633 F.3d at 918.

software" that would allow him to access those files.  Storm argues that he cannot be convicted based on these images, at least not without "additional evidence to point convincingly towards the defendant's knowledge of it." *Id.* at 4.

As a preliminary matter, the Court notes that the intended scope of this motion *in limine* by Defendant is not clear.  The motion refers to precluding the Government from "introducing" evidence recovered from unallocated space, although the parties appear to focus on evidence that the Government intends to "publish" (or show) to the jury, which is a smaller subset of the evidence that the Government intends to offer in evidence.  Further, Storm's motion refers to files "recovered" from the Lexar thumb drive, but the Government represents that it only seeks to publish to the jury files from the Lexar thumb drive that were found in the "trash bin," which is still "allocated space."[5]  These distinctions do not matter, however, because the Court holds that the Government may introduce and use exhibits obtained from unallocated space, Internet search histories ("cache files"), and "trash" to support its case against Defendant, subject only to the balancing of prejudice and probative value under Rule 403, which is discussed below in the Court's analysis of Storm's third motion.

During oral argument, the Government agreed that any conviction in this case must be based on files found in the "allocated space" of the computer media seized from Defendant. Nonetheless, files recovered from unallocated space, as well as from cache files, the Government argues, is relevant evidence because it provides context that helps to establish one or more disputed elements of the crime charged.  For example, the Government represents that "[e]vidence from unallocated space [on the seized laptop computer] is being offered solely to

---

[5] *See* n.4, *supra.*

help show Defendant's knowledge and identity, based in part on duplicate images found on the two thumb drives in allocated space." Gov't's Resp. Def.'s Mot. *in Limine* (Dkt. 69) at 2-3.  The Government proposes that the images retrieved from unallocated space be considered by the jury "in conjunction with" the files and images found in allocated spaces in the various devices in order to prove the element of Storm's knowing possession of images in the allocated space, not as an alternative basis for conviction.  *See id.* at 3.

In arguing for the exclusion of this evidence, Storm points to cases where convictions rested entirely on files found in a computer's Internet cache, *United States v. Dobbs*, 629 F.3d 1199 (10th Cir. 2011), or on files found in a computer's unallocated space that were deleted at an unknown time by an unknown user, *United States v. Flyer*, 633 F.3d 911 (9th Cir. 2011).  As explained above, these cases are distinguishable from the present case, where the Government has stated that it does not intend to seek a conviction based solely on files or images recovered from a computer's Internet cache or unallocated space.

Many of the cases relied upon by Storm are also "sufficiency of the evidence" appeals, which is a meaningfully different procedural posture:  the reasoning used to review the accumulation of evidence at the end of a trial cannot be uncritically transposed to evaluating the admissibility of evidence *ex ante*.  Whether evidence is ultimately sufficient to sustain a conviction is an entirely different question than whether it is relevant and admissible to establishing a particular element of an alleged offense.  The Government proposes to introduce files and images from unallocated space or Internet cache to help establish Storm's knowing possession of the images; it would be premature to exclude them, even if the deleted or cache files by themselves would not suffice to prove a crime.

OPINION AND ORDER – Page 10

III.     **Motion to Preclude Vast Majority of Images Proposed to Be Published to the Jury by the Government (Dkt. 67)**

In his third motion, Storm moves pursuant to Rule 403 to limit the Government "from publishing to the jury the vast amount of images of child pornography, child erotica, and child pornography/erotica-related anime."  The Government abbreviates "child pornography" as "CP," abbreviates "child erotica" as "CE," and abbreviates "child pornography/erotica-related anime" as "CT."[6]  For convenience, the Court will also use these abbreviations, although by doing so the Court does not imply that it has made any findings regarding whether the images identified by the Government as CP in fact satisfy the statutory definition of child pornography.[7]

Storm argues that the large number of images that the Government proposes to publish to the jury, whether CP, CE, or CT, should be significantly reduced in order to lessen the risk of unfair prejudice.  Storm urges the Court to consider the prejudicial effect of the jury seeing numerous images that are unnecessarily graphic or cumulative of other evidence, and he suggests

---

[6] Anime is a Japanese-style cartoon, and some "Japanese anime cartoons depict minors engaged in sexually explicit conduct."  *United States v. Koegel*, 777 F. Supp. 2d 1014, 1023 (E.D. Va. 2011).  The Government has not charged Storm with possession of either child erotica (images that do not meet the statutory definition of child pornography) or child pornography/erotica-related anime.  The Government intends to offer evidence of such CE and CT solely as part of the Government's case against Storm for knowingly possessing CP.  Because of the potentially prejudicial effect on the jury, however, from seeing even CE or CT, Storm moves to limit the number of images of CE or CT that may be shown to the jury.

[7] The Government also intends to offer images retrieved from the three media storage devices seized from Storm that depict non-pornographic images of minors who were then Storm's students at the middle school where he was teaching, as well as images of an adult woman, in various stages of undress, whom the Government represents is Storm's then-girlfriend, all as further circumstantial evidence that Storm possessed and controlled the various media storage devices.  No objections have been raised to the publication of this evidence, other than Storm's motion that the images of his students' faces be redacted or otherwise obscured.  That aspect of Storm's motion is discussed below.

OPINION AND ORDER – Page 11

that some images could be replaced with testimony describing their content or that the images should be redacted to distort the faces and genitalia of children.

The Ninth Circuit and other courts have looked favorably on efforts by district courts to manage potentially prejudicial impact by limiting the number of images published to the jury, in addition to issuing limiting instructions and conducting careful voir dire. *See, e.g.*, *Ganoe*, 538 F.3d at 1124 (affirming conviction where court limited prosecution to 10 very short video clips); *Smith*, 54 F. App'x at 283 (affirming conviction where judge "carefully limited the prosecution's use of the images as well as the number of representative images that could be introduced"); *accord United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008) (affirming conviction where fewer than 10 images and videos (out of 1,300) were shown to the jury); *United States v. Dodds*, 347 F.3d 893, 898 (11th Cir. 2003) (affirming conviction where 66 pictures (out of 3,400) were shown to the jury); *United States v. Becht*, 267 F.3d 767, 769 (8th Cir. 2001) (affirming conviction where 39 images (out of 11,000) were shown to the jury). Other options include allowing witnesses to describe the images in lieu of publishing them to the jury and making the images available to the jury during deliberations upon the jury's request. *See United States v. Sewell*, 457 F.3d 841, 843 (8th Cir. 2006); *Hay*, 231 F.3d at 638.

These cases, which involve careful efforts to limit unfair prejudice in child pornography prosecutions, reflect the principles underlying the Supreme Court's instructions in *Old Chief*. When a defendant has offered to stipulate to an element of a crime and raises a Rule 403 objection to the prosecution's evidence, the Supreme Court suggests the following approach:

> On objection, the court would decide whether a particular item of evidence raised a danger of unfair prejudice. If it did, the judge would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question *but for any actually available substitutes as well*. If

OPINION AND ORDER – Page 12

> an alternative were found to have substantially the same or greater
> probative value but a lower danger of unfair prejudice, sound judicial
> discretion would discount the value of the item first offered and exclude it
> if its discounted probative value were substantially outweighed by unfairly
> prejudicial risk. . . .  [T]he judge would have to make these calculations
> with an appreciation of the offering party's need for evidentiary richness
> and narrative integrity in presenting a case, and the mere fact that two
> pieces of evidence might go to the same point would not, of course,
> necessarily mean that only one of them might come in.  It would only
> mean that a judge applying Rule 403 could reasonably apply some
> discount to the probative value of an item of evidence when faced with
> less risky alternative proof going to the same point.

519 U.S. at 182-83 (emphasis added); *see also Merino-Balderrama*, 146 F.3d at 762 & n.3

(directing courts to apply *Old Chief*'s balancing approach "whenever a defendant offers to

stipulate to an element of the offense and raises a Rule 403 objection to the admission of

evidence probative of that element").

The Ninth Circuit has emphasized that, particularly when the disputed evidence is

"inflammatory," "reprehensible," or "abhorrent," "a district court making a Rule 403 decision

must know precisely what is in the [evidence] in order for its weighing discretion to be properly

exercised and entitled to deference on appeal."  *United States v. Curtin*, 489 F.3d 935, 957 (9th

Cir. 2007) (*en banc*).  This Court must therefore view all of the evidence to which Storm objects

and determine for each image whether its probative value outweighs its potential for unfair

prejudice.  *Id.* at 957-58; *accord United States v. Cunningham*, 694 F.3d 372, 383-87 (3d Cir.

2012); *United States v. Loughry*, 660 F.3d 965, 971-72 (7th Cir. 2011).

Following the directions of the Supreme Court in *Old Chief* and of the Ninth Circuit in

*Curtin* and other cases, on December 20, 2012, the Court conducted an *in camera* review of

every image of alleged CP, CE, and CT that the Government seeks to publish to the jury.  The

Court has considered whether each such image raises the danger of unfair prejudice.  If it does

OPINION AND ORDER – Page 13

not, the inquiry ends.  If it does, as many do here, the Court must consider, and has done so here, whether each such image is probative of one or more of the disputed elements in the case.  Here the disputed elements are knowing possession and transportation in interstate commerce.  In performing this analysis under Rule 403, the Court also considers whether the proffered evidence has "multiple utility," based on the Government's representations.  *Even if it does*, however, the Court then considers whether there is other, equally probative evidence that is less prejudicial: for example, a less disturbing image or the option to replace the image with testimony regarding its content.

Heeding the Supreme Court's cautionary note in *Old Chief* concerning even evidence that lacks multiple utility, the Court also considers whether a potentially prejudicial image adds to the narrative richness of the prosecution's case or whether it is merely cumulative.  If an image will likely add evidentiary value to the prosecution's case, the Court nevertheless considers whether there is alternative evidence that serves the same purpose equally well but holds less risk of prejudicing the defendant.  Based upon these considerations and after performing this review and analysis, the Court has made a determination under Rule 403 regarding each particular image. Specifically, the Court has considered for each image of alleged CP, CE, and CT whether that image has probative value (including multiple utility or other value to the prosecution's overall case narrative) that outweighs the risk of unfair prejudice or, conversely, whether the risk of unfair prejudice substantially outweighs the probative value of the evidence.

Before turning to a discussion of the Court's specific evidentiary conclusions, the Court observes as a general matter that, although the Government argues that it has already significantly narrowed the selection of images it intends to publish to the jury, the Government

still seeks to publish significantly more images than several other courts have allowed in other

cases alleging involving alleged child pornography.  *See, e.g.*, *Ganoe*, 538 F.3d at 1124 (10 video

clips); *Schene*, 543 F.3d at 643 (fewer than 10 images and video clips); *Dodds*, 347 F.3d at 898

(66 pictures); *Becht*, 267 F.3d at 769 (39 images).  This Court concludes that many of the images

that the Government intends to publish to the jury are cumulative, with the result that their

potential for unfair prejudice substantially outweighs their probative value.

Storm also asks the Court to consider the extra burden for the jury if it is asked to view

all of the images that the Government seeks to publish, as well as the additional trauma to the

child victims depicted in those images if the evidence of their abuse is viewed by more people.

Neither consideration, however, is an appropriate factor for the Court's evaluation under

Rule 403.  Showing images of child abuse to jurors is inherent to the process of prosecuting an

individual for possessing such images.  Such publication does not constitute additional

victimization of the children whose images are shown to the jury, but rather it is a part of the

process of their vindication in a court of law through the lawful prosecution of alleged

wrongdoers.  Futher, it is the duty of jurors to see and weigh relevant evidence, even disturbing

evidence, when sitting in judgment of their fellow citizens.  Nonetheless, the Supreme Court and

the Ninth Circuit have instructed district courts to undertake a careful review of all proffered

evidence to ensure that the prosecution will not present more images of child pornography than

is strictly necessary for the Government fairly to present its case.  The Court has done that.

Finally, Storm asks the Court to direct that all or some of the images of children in the

exhibits be redacted.  He argues that jurors may recognize photographs of Storm's students who

are depicted in a non-pornographic fashion, which Storm argues could result in a mistrial.  The

Court has been unable to find applicable precedent that discusses the partial redaction of exhibits in a child pornography prosecution.  Further, the faces of the children may well have evidentiary import; for example, the prosecution has prepared comparison slides involving photographs of Storm's students and the images of child pornography that is charged in this case.  Redacting the images as Defendant requests could distort the narrative arc of the prosecution's case in a manner that is unfair to the Government and contrary to the Supreme Court's guidance and admonitions in *Old Chief*.  The Court intends to address Storm's concern about potential juror disqualification through careful voir dire, with the assistance of the parties.  The Court does not believe that redacting or distorting the trial exhibits is necessary or appropriate.

With these factors in mind, and based on its *in camera* review of the evidence conducted on December 20, 2012, the Court issues the following Order concerning the alleged images of CP, CE, and CT that the Government may publish to the jury.  As discussed above, these images fall in to three categories that, at least for the purposes of these motions, the Government and the Defendant appear to agree upon.   Again, these three categories are:  (1) child pornography ("CP"); (2) child erotica ("CE") that do not fall within the statutory definition of child pornography; and (3) cartoons or anime ("CT") that are drawings of children, sometimes interacting with drawings of adults, in a pornographic manner.  Where a slide contains both alleged CP and CE or both CP and CT, it will be treated and counted for these purposes simply as a CP slide.  As part of its *in camera* review, the Court relied upon and made extensive use of the Government's Supplemental Exhibits in Opposition to Defendant's Motions *in Limine* to Preclude or Limit Images of Child Pornography (Dkt. 77).

As more fully set forth below, out of the 97 slides containing alleged CP that the Government seeks to publish to the jury, the Court will allow no more than 38 slides to be shown, unless the jury during deliberations requests to see additional evidence.  Other limitations, also described below, will apply to the slides containing CE or CT (without CP) that that Government seeks to publish.

**I.      Macintosh Laptop (also known as "Macbook Laptop")**

A.      Laptop – Documents (allocated space)

1.      Under the Directory "Presentation4," there are 6 slides that contain CE (and none that contain CP).

*Ruling: Two of these slides (slides 11 and 16) also appear, in whole or in part, in the laptop's unallocated space (at slides 4 and 7).  They may be published to the jury based on their "multiple utility."  The remaining slides in this group may not be published, although testimony may be elicited to describe them.  Such publication would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

2.      Under the Directory "Priv 7," there are 2 slides that contain CP.

*Ruling:  Two of these slides (slides 3 and 7) also appear, in whole or in part, in the laptop's unallocated space (at slides 3 and 23).  They may be published to the jury based on their "multiple utility" and hence increased probative value.  The remaining slides in this group may not be published, although testimony may be elicited to describe them.  Such publication would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

3.      Under the Directory of "priv 7," there are 6 slides that contain CE (without CP).

*Ruling:  None of these slides also appear in the laptop's unallocated space or in either thumb drive.  They therefore have lesser probative value.  The Government may select and publish to the jury one slide from these six, although testimony may be elicited to describe the balance.  Publishing the balance, however, would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

B.      Laptop – Internet Cache

OPINION AND ORDER – Page 17

1.     Under the Directory "Firefox cache," there are 18 slides that contain CT (and none that contain CP or CE).  (Firefox is an internet web browser.)

*Ruling:  The Government may select and publish to the jury three slides from these 18, although testimony may be elicited to describe the balance.  Publishing the balance, however, would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

C.     Laptop – Unallocated Space

1.     There are 27 slides that contain CP.

*Ruling:  Ten of these slides (Macbook laptop slides 3, 23, 26, 29, 37, 41, 43, 44, 45, and 48) also appear, in whole or in part, on allocated space on the Macbook laptop, in the Lexar thumb drive, or in the Geek Squad thumb drive; thus, they offer evidence relevant to knowing possession.  Four other slides (Macbook laptop slides 31, 32, 33, and 34) offer evidence relevant to internet downloading and hence to the element of interstate commerce.  In addition, Macbook laptop slides 39, 44, and 46 provide evidence of a known out-of-state victim, and are therefore also probative of transportation in interstate commerce.*

*All 16 of these slides (3, 23, 26, 29, 31, 33, 33, 34, 37, 39, 41, 43, 44, 45, 46, and 48) may be published to the jury based on their "multiple utility" and hence increased probative value.  Although the other 11 CP slides in this group not mentioned above may be described through testimony, they may not be published to the jury because they are cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

*This exclusionary ruling under Rule 403 applies to, among other slides, Macbook laptop slide 38, which appears to depict a toddler (who appears to be significantly younger than the children depicted in the other slides) engaged in sexually explicit conduct.  Such a depiction runs an especially high risk of unfair prejudice, and there does not appear to be any "multiple utility" attached to this slide that might otherwise increase its probative value.  The Court's conclusion may be different, however, if the Government seeks to invoke an enhanced sentence for images involving a prepubescent minor under 18 U.S.C. § 2252A(b)(2) and wishes to ask the jury for a specific factual finding relating to this slide or issue.  If that is the case, the Government may more specifically describe the probative value of Macbook laptop slide 38 (which the Court notes was allegedly found in unallocated space) in a motion for reconsideration of this Order.*

2.     There are 18 slides that contain CT or CE.

*Ruling:  Three of these slides (Macbook laptop slides 4, 7, and 9) also appear, in whole or in part, on allocated space on the laptop, in the Lexar thumb drive, or in the Geek Squad thumb drive; thus, they offer evidence relevant to knowing possession.  Six other slides (Macbook*

*laptop slides 5, 13, 18, 19, 20, and 21) offer evidence relevant to internet downloading and hence transportation in interstate commerce. These nine slides may be published to the jury based on their "multiple utility." Although the other CT or CE slides in this group not mentioned above may be described through testimony, they may not be published to the jury because they are cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

   D.  Laptop – Files other than those containing CP, CE, or CT

  *Ruling: The Court places no restrictions on the Government's ability to publish to the jury laptop files that do not contain CP, CE, or CT, as identified in Dkt. 77-3.*

## II. **Lexar Thumb Drive**

   A.  Directory "Private"

     1.  There are 7 slides that contain CP.

  *Ruling: One slide (slide 112) both appears on unallocated space in the Macbook laptop (at laptop 26) and is of a known out-of-state victim. Two other slides (slides 117 and 118) offer evidence relevant to internet downloading and hence transportation in interstate commerce. These three slides may be published to the jury based on their "multiple utility" and hence increased probative value. Although the other CP slides in this group not mentioned above may be described through testimony, they may not be published to the jury because they are cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

     2.  There are 6 slides that contain CE (without CP).

  *Ruling: The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance. Publishing the balance would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

     3.  There are 5 slides that contain CT (without CP).

  *Ruling: The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance. Publishing the balance would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

   B.  Directory "Private 2"

OPINION AND ORDER – Page 19

1.      There are 21 slides that contain CP.

*Ruling:  One of these slides (slide 73) also appears, in whole or in part, in the Macbook laptop's unallocated space (at slide 48).  This slide may be published to the jury based on its "multiple utility" and hence increased probative value.  Of the remaining slides in this group, in order to provide the jury with a sample of what this file contains, the Government may select and publish to the jury up to two additional slides, for a total of three slides, although testimony may be elicited to describe the balance.  Publishing the balance, however, would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

2.      There are 16 slides that contain CE (without CP).

*Ruling:  The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance.  Publishing the balance would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

3.      There are 5 slides that contain CT (without CP or CE)

*Ruling:  The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance.  Publishing the balance would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

C.      Directory "Private 6"

1.      There are 6 slides that contain CP.

*Ruling:  One of these slides (slide 29) also appears, in whole or in part, in the Macbook laptop's unallocated space (at slide 29).  This slide may be published to the jury based on its "multiple utility" and hence increased probative value.  Of the remaining slides in this group, in order to provide the jury with a sample of what this file contains, the Government may select and publish to the jury one additional slide, for a total of no more than two slides, although testimony may be elicited to describe the balance.  Publishing the balance, however, would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

2.      There are 4 slides that contain CE (without CP).

*Ruling:  The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance.  Publishing the balance would be*

OPINION AND ORDER – Page 20

*cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

        3.      There are 7 slides that contain CT (without CP or CE)

*Ruling:  The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance.  Publishing the balance would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

        D.      Lexar Thumb Drive – Files other than those containing CP, CE, or CT

*Ruling:  The Court places no restrictions on the Government's ability to publish to the jury Lexar thumb drive files that do not contain CP, CE, or CT, as identified in Dkt. 77-3.*

**III.**     **Geek Squad Thumb Drive**

        A.      Directory "Private d"

        1.      There are 12 slides that contain CP.

*Ruling:  Five slides (slides 12, 15, 21, 23, and 30) also appear, in whole or in part, on unallocated space in the Macbook laptop or depict a known out-of-state victim.  These slides may be published to the jury based on their "multiple utility" and hence increased probative value.  Although the other CP slides in this group not mentioned above may be described through testimony, they may not be published to the jury because they are cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

        2.      There is 1 slide that contains CE (without CP).

*Ruling:  The Government may publish this slide to the jury.*

        3.      There are 2 slides that contain CT (without CP)

*Ruling:  The Government may select and publish one of these two slides to the jury, although testimony may be elicited that describes the other.  Publishing both slides would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

        B.      Directory "Private b"

        1.      There are 18 slides that contain CP.

*Ruling:  Four slides (slides 19. 82, 84, and 90) also appear, in whole or in part, on unallocated space in the Macbook laptop or depict a known out-of-state victim.  These four slides may be published to the jury based on their "multiple utility" and hence increased probative value.  Although the other CP slides in this group not mentioned above may be described through testimony, they may not be published to the jury because they are cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

        2.        There are 6 slides that contain CE (without CP).

*Ruling:  The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance.  Publishing the balance would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

        3.        There are 3 slides that contain CT (without CP)

*Ruling:  The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance.  Publishing the balance would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

    C.        Directory "Priv g"

        1.        There is 1 slide that contains CP.

*Ruling:  The Government may publish this slide to the jury.*

        2.        There are 4 slides that contain CE (without CP).

*Ruling:  The Government may select and publish one of these slides to the jury, although testimony may be elicited that describe the balance.  Publishing the balance would be cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

        3.        There is 1 slide that contains CT (without CP)

*Ruling:  The Government may publish this slide to the jury.*

    D.        Directory "Priv 8"

        1.        There are 2 slides that contain CP.

*Ruling: One slide (slide 4) both appears, in whole or in part, on unallocated space in the Macbook laptop (at Macbook laptop slide 37) and offers evidence relevant to internet downloading and hence transportation in interstate commerce. This slide may be published to the jury based on its "multiple utility" and hence increased probative value. Although the other CP slide in this group not mentioned above may be described through testimony, it may not be published to the jury because it is cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

       2.      There are 2 slides that contain CE (without CP).

*Ruling: One slide (slide 5) appears, in whole or in part, on unallocated space in the Macbook laptop (at Macbook laptop slide 9). This slide may be published to the jury based on its "multiple utility." Although the other CP slide in this group not mentioned above may be described through testimony, it may not be published to the jury because it is cumulative, and the risk of unfair prejudice would substantially outweigh the probative value of this additional evidence.*

      E.      Directory "Private"

       1.      There is 1 slide that contains both CP and CE images.

*Ruling: This slide appears to show one or more of the same images, in whole or in part, that appear on both the Lexar thumb drive and the Geek Squad thumb drive. The Government may publish this slide to the jury.*

      F.      Geek Squad Thumb Drive – Files other than those containing CP, CE, or CT

*Ruling: The Court places no restrictions on the Government's ability to publish to the jury Geek Squad thumb drive files that do not contain CP, CE, or CT, as identified in Dkt. 77-3.*

///

///

///

///

///

///

///

OPINION AND ORDER – Page 23

**CONCLUSION**

For the forgoing reasons, Storm's first two motions *in limine* (Dkts. 64 and 65) are

DENIED, and Storm's third motion *in limine* (Dkt. 67) is GRANTED IN PART AND DENIED

IN PART.  Of the 97 slides that appear to contain child pornography, the Government may show

no more than 38 slides to the jury, as explained in this Opinion and Order.  Other limitations on

what the Government may show to the jury are also described in this Opinion and Order.  In

addition, if any party believes that the Court has made an error in any part of this ruling or

analysis, leave is hereby granted promptly to file a particularized motion for reconsideration

within seven calendar days of the date of this Opinion and Order.

IT IS SO ORDERED.

DATED this 31st day of December, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge